**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRANDON WRIGHT,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:26-cv-00144-EGS** |
| **MARKWAYNE MULLIN,** *et al.*, | |
| **Defendants.** | |

**THE DISTRICT OF COLUMBIA'S REPLY IN FURTHER SUPPORT
OF ITS NOTICE OF INTERVENTION UNDER RULE 5.1 TO DEFEND
THE CONSTITUTIONALITY OF A DISTRICT OF COLUMBIA STATUTE**

The District of Columbia (the District) filed an intervention brief under Rule 5.1 in this matter to defend the constitutionality of D.C. Code § 23-542(b)(3) (D.C. Wiretap Statute), the tortious purpose exception for one-party consent to wiretapping, which Defendant Heidi Doe argues is unconstitutional in seeking dismissal of Plaintiff Brandon Wright's wiretapping claim. In her response to the District, Doe claims that the tortious purpose exception is content based, verges on a "thought crime," and fails both under strict scrutiny and intermediate scrutiny. She also argues that the tortious purpose provision is unconstitutionally vague. In each respect, however, Doe is wrong. The Court should uphold the statute.

**ARGUMENT**

**I.      The Tortious Purpose Exception Is Constitutional Under the First Amendment.**

**A.      The Tortious Purpose Exception Is Content Neutral.**

As the District noted in its opening brief, D.C. Code § 23-542(b)(3) is content neutral because it relies not on the viewpoint, topic, or content of the wiretap, but rather the purpose of the wiretapper. *See* D.C. Not. Intervention Under R. 5.1 to Def. Constitutionality of a D.C. Statute (D.C. Not.) [30] at 5–7; *see also Democracy Partners v. Project Veritas Action Fund* (*Democracy Partners II*), 453 F. Supp. 3d 261, 288 (D.D.C. 2020) (Huvelle, J.). Doe argues that

the statute is content based "if the purpose of an interception is publication of specific intercepted words and one knows ex ante that it is strictly those words that will lead to the termination of Mr. Wright's employment."  Def. Doe's Resp. to the D.C. Not. (Doe Resp.) [36] at 3.  But that is not the case.  The Supreme Court has made clear that a regulation is content based "'if it target[s] speech based on its communicative content'—that is, if it applies to particular speech because of the topic discussed or the idea or message expressed."  *City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 596 U.S. 61, 69 (2022) (citation modified) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)).  Doe paints the statute with too thin a brush attempting to link it to "publication of specific intercepted words," Doe Resp. at 3, because the tortious purpose exception does not hinge on any specific intercepted words at all.  Put another way, it does not matter what specific words Doe may or may not have been hoping to intercept if her overall purpose in recording was to commit a tortious interference with an employment relationship.  *See Democracy Partners II*, 454 F. Supp. 3d at 289 ("[A] law is not considered content based simply because a court must look at the content of an oral or written statement in order to determine whether a rule of law applies."); *see also Reagan*, 596 U.S. at 69 (holding that a regulation that "requires an examination of speech only in service of drawing neutral . . . lines," is "agnostic as to content," and lacks a "content-based purpose or justification" is still "content neutral and does not warrant the application of strict scrutiny").

Doe also argues that *Democracy Partners II* is inapplicable, claiming that case to be distinguishable because the interceptions there were rendered illegal not based on the content of the interception but because the interceptor had the purpose of breaching a fiduciary duty, which could have been accomplished "prior to any publication or 'expressive conduct.'"  *See* Doe Resp. at 3.  Doe claims that this case is different because Wright alleges that Doe's intention was to

2

"extract potentially controversial political responses" and publish them, and that therefore "the content of the interceptions was Doe's objective." *See id*. at 3–4 (citing Compl. ¶¶ 22, 30).

First, it is difficult to ascertain the factual distinction Doe is drawing. Wright alleges on information and belief that the Department of Homeland Security (DHS) was provided a copy of the intercepted material before it was published, suggesting that the tort of interference with an employment relationship could equally well have been committed "prior to any publication or expressive conduct" just as much as the tortious breach of a fiduciary duty was in *Democracy Partners II*. *See* Compl. ¶ 30.[1] Regardless, there was no real factual dispute in *Democracy Partners II* that the intercepted material in that matter that was transmitted to the third party (the defendant's employer) was ultimately intended for publication as is also alleged here. *See Democracy Partners II*, 453 F. Supp. 3d at 268–71; Compl. ¶ 28.

Finally, Doe makes offhand reference to a recent case in another district addressing the constitutionality of a law aimed at "deepfakes," an entirely different type of regulation. Doe Resp. at 4 (citing *Kohls v. Bonta*, 797 F. Supp. 3d 1177, 1184–85 (E.D. Cal. 2025)). In particular, she suggests that *Kohls* "persuasively concluded that a law is content based if it punishes content that is 'reasonably likely' to cause reputational harm while leaving positive or neutral content unregulated." *Id*. But that case held nothing of the sort. Rather, it straightforwardly noted that the statute was content based because it strictly defined the specific content that was regulated— speech concerning "a political candidate, elected official, elections official, ballot, or voting mechanism,"—and it additionally "delineate[d] acceptable and unacceptable speech based on its purported truth or falsity meaning that non-materially deceptive content is excluded." *Kohls*,

---

[1] Similarly, although not directly alleged, it appears that O'Keefe and the O'Keefe Media Group were provided the video by Doe, as it is not alleged that she published it herself. *See id*. ¶ 27.

797 F. Supp. 3d at 1183.  This clear topic restriction, alongside the other portions of the statute that were viewpoint- and speaker-based, rendered the statute subject to strict scrutiny.  *Id*. at 1184.

In contrast, the D.C. Wiretap Statute is completely agnostic as to the topic of the recording, turning instead on the purpose of the interceptor.  Doe characterizes the exception as amounting to "protect[ing] a journalist who records with the intent to exonerate a subject but makes her a felon if she records with the intent to expose the same subject."  Doe Resp. at 4.  The statute does not make this distinction.  If an interceptor has a non-criminal and non-tortious intent to "expose" a subject, that would be lawful.  D.C. Code § 23-542(b)(3).  Equally, it is not beyond the scope of the statute that certain tortious or criminal purposes, such as to commit a breach of fiduciary duty, might well be compatible with an interceptor's subjective "intent to exonerate a subject," Doe Resp. at 4.  In sum, the statute is not a "targeted restriction of the newsgathering process" dependent on "the substance of [] investigative goals," *id.*, but rather permits non-criminal and non-tortious interceptions and restricts those that have such purposes— whether in the course of newsgathering or not.

### B.    The Tortious Purpose Exception Satisfies Intermediate Scrutiny

Next, Doe disputes whether the tortious purpose exception satisfies intermediate scrutiny.  A content neutral statute satisfies intermediate scrutiny when it advances significant government interests, is narrowly tailored, and leaves open ample alternative channels of communication.  *See* D.C. Not. at 7 (quoting *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 846 F.3d 391, 407 (D.C. Cir. 2017)).  The tortious purpose exception to the D.C. Wiretap Statute advances significant governmental interests, specifically by preventing interceptions and thereby protecting privacy and preventing crimes or torts which would otherwise rely on the intercepted communications.  *See* D.C. Not. at 4–10; *see also* D.C. Code § 23-542(b)(3); *Democracy*

*Partners II*, 453 F. Supp. 3d at 289 ("The significant government interest is deterrence of criminal or tortious acts such as blackmail that are facilitated by secret wiretaps.").

Doe first attempts to distinguish the recording law cases cited by the District by suggesting that they dealt with generally applicable privacy rules that were content neutral and then circles back to her argument that the D.C. Wiretap Statute targets her expressive objective and should therefore be considered content based. *See* Doe Resp. at 5. But her claimed distinction is unavailing because the D.C. Wiretap Statute does not target her expressive objective but her allegedly criminal or tortious one. *See* D.C. Not. at 2–3; *see also supra* Argument § I.A. In any case, this line of argument additionally fails because it does not substantively address whether the D.C. Wiretap Statute serves significant governmental interests, whether it is sufficiently narrowly tailored, or whether the statute leaves open ample alternative channels of communication.

Doe then shifts back to her reliance on *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007), arguing that the District failed to fully address it. *See* Doe Resp. at 5. Doe ignores the fact that Chief Justice Robert's opinion[2] in *Wisconsin Right to Life* dealt with the question of whether to use an "intent and effect" test "for separating, in an as-applied challenge, political speech protected under the First Amendment from that which may be banned." *Wisconsin Right to Life*, 551 U.S. at 467. Chief Justice Robert's opinion rejected such a specialized test for as-applied challenges to content based statutes. *Id.* Having declined to adopt a specialized test for as-applied challenges, Chief Justice Robert focused his analysis and review of a content based statute under its strict scrutiny framework. *Id.* at 464. More specifically, he addressed whether

---

[2]    In *Wisconsin Right to Life*, Chief Justice Roberts only issued the opinion of the Court with respect to Parts I and II of his opinion. 551 U.S. at 455. Only Chief Justice Roberts and Justice Alito joined Part III, on which Doe relies. *Id.*

or not the statute, as-applied in that case, furthered a compelling governmental interest and not whether the statute was narrowly tailored. *Id.* at 476–77 ("This Court has never recognized a compelling interest in regulating ads . . . that are neither express advocacy nor its functional equivalent. The District Court below considered interests that might justify regulating [the] ads here, and found none sufficiently compelling. We reach the same conclusion." (citation omitted)). But unlike the statute in *Wisconsin Right to Life*, the D.C. Wiretap Statute does not concern itself with the content of the recorded interception, but with the act of the interception itself when paired with a criminal or tortious purpose. *See* D.C. Code § 23-542(b)(3). Thus, to the extent that *Wisconsin Right to Life* is informative at all, it is merely to affirm that the normal First Amendment standards for content based and content neutral statutes apply in analyzing the D.C. Wiretap Statute.

Doe then addresses the District's actual tailoring arguments and claims that the statute is insufficiently tailored because it "does nothing more than change the privacy of the conversation, permitting criminal charges and a civil lawsuit for what was going through the interceptor's head at the time." Doe Resp. at 6. But Doe does not actually articulate how the statute is not tailored. She does not contend with the fact that the safe harbor that is created by one party consent in the D.C. Wiretap Statute is narrowed, *see* D.C. Not. at 8, instead arguing that by narrowing the safe harbor based on criminal and tortious intentions in intercepting the communication, that the statute creates a "bear trap" that conflicts with the purpose provision and wiretapping generally, Doe Resp. at 5. But there is no conflict. The D.C. Wiretap Statute generally forbids wiretapping. D.C. Code § 23-542(a). It excludes from this prohibition three categories, *id.* § 23-542(b), one of which is persons party to the communication or where a party has given prior consent *except* if the communication is being intercepted for the purpose of committing a crime, tort, or other

injuries act, *id.* § 23-542(b)(3).  Thus, the tortious purpose exception merely retains the general

prohibition on wiretapping for persons intending to intercept communications to which they are a

party—or for which they have received the consent of one of the parties—and are intercepting

the communication for the purpose of committing a tortious act.  *Id.* § 23-542(b)(3).  The statute

is narrowly tailored to protect the privacy interests of the parties to the communication as well as

to prevent crimes and torts by only excluding interceptions from the general prohibition when the

interceptor lacks a criminal or tortious purpose for intercepting the communication.

Doe also claims the D.C. Wiretap Statute is underinclusive.  "The main purpose of

inquiring into underinclusiveness is to ensure that the proffered state interest actually underlies

the law."  *TikTok Inc. v. Garland*, 122 F. 4th 930, 965 (D.C. Cir. 2024).  A statute is fatally

underinclusive only "if it cannot fairly be said to advance any genuinely substantial

governmental interest, because it provides only ineffective or remote support for the asserted

goals, or limited incremental support."  *Id.* (citation modified).  Doe argues that the statute is

underinclusive because the definition of "oral communication" would leave out interceptions of

communications where the speaker does not have an expectation of privacy, yet the interceptor

could still have a criminal or tortious purpose, thus "failing" to achieve the government's

interests in preventing crimes and torts.  *See* Doe Resp. at 6.  But a statute need not be perfectly

tailored to survive intermediate scrutiny; even narrow tailoring under the Supreme Court's strict

scrutiny analysis does not require perfect tailoring.  *In re Sealed Case*, 77 F. 4th 815, 830–31

(D.C. Cir. 2023) ("It bears emphasis that, under the strict-scrutiny standard, a restriction must be

narrowly tailored, not 'perfectly tailored.'" (quoting *Williams-Yulee v. Fla. Bar*, 575 U.S. 433,

454 (2015)).  The District has chosen to prohibit the wiretapping of oral communications,

defined as requiring the speaker to have "exhibit[ed] an expectation that the communication is

7

not subject to interception under circumstances justifying the expectation." D.C. Code § 23-541(2); *id.* § 23-542(a).  The statute's prohibition of wiretapping serves to protect the interests of privacy and to prevent crimes and torts that rely on intercepted communication.  *Democracy Partners II*, 453 F. Supp. 3d at 289.  There is simply less of a privacy interest to be protected for public statements compared to private ones.  Doe provides no argument to suggest that the statute cannot fairly be said to advance these interests, that it provides only ineffective or remote support, or that the support is limited and incremental.  *See TikTok*, 122 F.4th at 965.

Thus, the Court should find that the D.C. Wiretap Statute is narrowly tailored.

**C.        Alternatively, the Tortious Purpose Exception Satisfies Strict Scrutiny**

On strict scrutiny, Doe fails to even engage with the standard she proposes, as she does not discuss how the interests of privacy or preventing crimes and torts are not compelling government interests or how there may be less restrictive means of protecting them.  *See* Doe Resp. at 7.  Doe argues that the District "conflate[s] the interest of protecting individual privacy with the interests of preventing any crime or tort," Doe Resp. at 7, but the District does not conflate them, the District points to them as two separate interests that the D.C. Wiretap Statute advances, *see* D.C. Not. at 10.  The closest Doe comes to addressing the relevant standard is when she suggests that specific relevant crimes or torts already have legal remedies.  Doe Resp. at 7.  But Doe fails to faithfully engage with the actual interest of preventing crimes and torts facilitated by wiretaps.  The District's wiretap statute achieves that aim by prohibiting wiretapping generally.  *See* D.C. Code § 23-542(a), (b)(3).  Doe provides no support for any argument that the D.C. Wiretap Statute does not protect against wiretapping, including wiretapping with one-party consent but a tortious or criminal purpose.  The statute hinders persons who intend to commit interceptions with the ultimate purpose or goal of committing a crime or tort, thereby also preventing crimes or torts that rely on the interception.  The statute is

thus structured so that "its scope precisely tracks the behavior" the District has a compelling interest in preventing. *Democracy Partners II*, 453 F. Supp. 3d at 289.[3] The Court should thus find that the statute satisfies strict scrutiny.

## II.    The D.C. Wiretapping Statute Is Not Unconstitutionally Vague.

As for Doe's other constitutional attack, Doe claims that the D.C. Wiretap Statute is unconstitutionally vague because, in her view, "it facilitates arbitrary and discriminatory enforcement." Doe Resp. at 8. Doe again asks the Court to view the statutory framework in the wrong order. Doe argues that the tortious purpose exception pairs the interceptor's state of mind "with a wholly legal" act, rather than considering her state of mind along with "an actus reus, or wrongful act." *Id*. But this framing is incorrect because the D.C. Wiretap Statute generally prohibits interception of oral communications, and its exception is only applicable in the first place if the interceptor is a party to the communication. *See* D.C. Code § 23-542(a). Because wiretapping is generally prohibited, the tortious purpose exception is in fact "simply one part of the provision paired with an actus reus, or wrongful act." Doe. Resp. at 8.

Indeed, Doe does not argue that she is unable to avoid prohibited conduct under the D.C. Wiretap Statute. *See* Doe Resp. at 7–9. Nor does she engage with the District's argument that the "fact to be proven" is not indeterminate because the conduct is not defined subjectively. *See* D.C. Not. at 11; *see* Doe Resp. at 7–9. The D.C. Wiretap Statute's text provides specificity as to what is prohibited, D.C. Code § 23-542(a), and when it is not prohibited, *id.* § 23-542(b). *See also* D.C. Not. at 11–12; *see also United States v. Williams*, 553 U.S. 285, 306 (2008) ("Whether someone held a belief or had an intent is a true-or-false determination, not a subjective judgment

---

[3]    The Court in *Democracy Partners II* found that the D.C. Wiretap Statute was content-neutral and therefore only considered whether the District's interests met the requirement of being significant. *Id.*

. . . .").  And the purpose exception is further bolstered by the existing statutes and caselaw defining crimes and torts.  D.C. Not. at 12; *see also Democracy Partners II*, 453 F. Supp. 3d at 290 (finding no legal authority supporting the argument that the term "tortious purpose" is unconstitutionally vague and citing *United States v. Edelson*, 581 F.2d 1290, 1292 (7th Cir. 1978) which rejected a similar argument).  In the end, there are any number of factual contexts in which "the only determinative element is intent," Doe Resp. at 9, between a lawful and a proscribed act, even acts involving speech.  That alone cannot render a statute unconstitutionally vague.  Doe fails to meaningfully engage with the District's arguments and the Court should thus uphold the D.C. Wiretap Statute.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the District's Notice, the Court should hold that D.C. Code § 23-542(b)(3) is constitutional under the First and Fifth Amendments.

Dated: June 17, 2026.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Marcus D. Ireland*
BRENDAN HEATH [1619960]
MARCUS D. IRELAND [90005124]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
(202) 702-2910
marcus.ireland@dc.gov

10

*Counsel for the District of Columbia*

11